
FILED
11-13-02
DAVID W. DANIEL, CLERK
US DISTRICT COURT, EDNC

No. 5:99-CV-677-BR

RICH FOOD SERVICES, INC., a )
Wyoming corporation, )
DEBRA K. SINGLETARY, and ROY A. )
BALDWIN, )
)
    Plaintiffs, )
)
v. ) O R D E R
)
RICH PLAN CORPORATION, a Delaware )
corporation; RICHARD H. DARLING; R. )
BRUCE EVANS; ROGER W. LORD; )
HERMAN A. GEIST; CHERYL A. )
THOMPSON; W.E. ADAMSON; )
HAROLD T. BROADHURST; DOUGLAS )
L. DAVIS; THOMAS A. VOKAS; )
WILLIAM R. WILSON; BRENT A. )
ADAMSON; and BRYCE A. JOHNSON, )
)
    Defendants. )

This matter is before the court on defendant Harold T. Broadhurst's motion for summary judgment.

Plaintiffs' second amended complaint contains the following counts against Broadhurst: fraud, intentional and negligent misrepresentation (Count II); violation of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. §§ 75-1.1, *et seq.* (Count III); violation of the New York Consumer Protection from Deceptive Acts and Practices Act (hereinafter New York Consumer Protection Act), N.Y. Gen. Bus. Law, Article 22-A, §§ 349 *et*

Served

*seq.* (Count IV); and the "Individual Liability of the Corporate Officers and/or Directors of the Defendant Corporation/[Rich Plan Corporation]" alleging, among other things, violations of N.Y. Bus. Corp. Law § 717 (1996) and N.C. Gen. Stat. § 55-8-30 (Count VI).

On 29 March 2002, defendant Harold Broadhurst filed this motion for summary judgment and a supporting memorandum seeking summary judgment as to all claims against him. Plaintiffs filed a response on 29 April 2002 along with a supplemental affidavit. Broadhurst filed a reply on 16 May 2002. The motion is ripe for review.

## Summary Judgment

Summary judgment is appropriate only if the court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). To withstand summary judgment, the nonmoving party cannot rest on his pleadings; rather, he must establish the existence of a genuine issue of material fact by presenting evidence on which the jury could reasonably find in his favor. Anderson, 477 U.S. at 252.

While this court must take the evidence in the light most favorable to plaintiffs for purposes of defendant Broadhurst's summary judgment motion, the court need not "'accept unreasonable inferences based on conjecture or speculation.'" Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town of Randolph, 932 F.2d 89, 92 (1st Cir. 1991)(quoting Santiago-Negron v. Castro-Davila, 865 F.2d 431, 445 (1st Cir. 1989)). As the Fourth Circuit has explained,

> [O]nly "reasonable" inferences from the evidence need be
> considered by the court.... Whether an inference is reasonable
> cannot be decided in a vacuum; it must be considered "in light of
> the competing inferences" to the contrary.... In the end, the non-
> moving party must do more than present a "scintilla" of evidence in
> its favor.... Rather, the non-moving party must present sufficient
> evidence such that "reasonable jurors could find by a
> preponderance of the evidence" for the non-movant, ... "for an
> apparent dispute is not 'genuine' within the contemplation of the
> summary judgment rule unless the non-movant's version is
> supported by sufficient evidence to permit a reasonable jury to find
> the fact[s] in his favor." ... Thus, if the evidence is "merely
> colorable" or "not significantly probative," a motion for summary
> judgment may be granted.

Sylvia Development Corp. v. Calvert County, Maryland, 48 F.3d 810, 818 (4th Cir. 1995).

## Discussion

### I. Facts [1]

Harold Broadhurst has been involved with Rich Plan Corporation (RPC) in many capacities. When plaintiffs Singletary and Baldwin (hereinafter collectively referred to as "plaintiffs") met him, Broadhurst was the Vice President of Sales and Marketing at Rich Plan of Utica, Inc. (RPU), an RPC franchise. Based on plaintiffs' exhibits, it appears that Broadhurst provided some additional services to RPC, beyond his role as a franchisee, beginning in July 1990, and that he served as the Chair of RPC's Marketing Committee in and around 1991. (Pls.' Opp., Exs. 1, 2.) These exhibits also indicate that RPC compensated Broadhurst for his work on behalf of the corporation in the amount of $25,000 or $30,000 for 1990 and 1991. (Id., Ex. 1.) During this time period, it appears that RPC placed Broadhurst, in his capacity as Marketing Committee Chair, in charge of a Mr. Lortscher, who had been hired to perform some franchise

---

[1] The facts of this case are described in greater detail in this court's 20 November 2001 Order.

-3-

consulting work. (Id., Ex. 2 at 2.)

Broadhurst became a director of RPC in March 1992 and served in that capacity through October 1994. During his tenure as Director, beginning in October 1993, Broadhurst also served on a special committee charged with reviewing and making uniform the Full Service Agreement (FSA) being sold by RPC franchisees. Broadhurst never served as an officer of RPC, however. (Def.'s Mem. at 2.) Broadhurst retired from his position at RPU and his directorship with RPC in October 1994. (Id.)

Broadhurst interacted with plaintiffs beginning in 1991 when plaintiffs began considering the RPC franchise. He allowed them to attend a sales training session conducted by RPU in New York in 1991, and, on several occasions between 1991 and 1995, talked with plaintiffs about marketing and selling RPC's FSA. Despite their interactions with Broadhurst and any advice received from him with respect to the marketing of the FSA, plaintiffs elected not to sell the FSA in North Carolina when they entered into the 1992 Agreement on 8 July 1992 as representatives of Rich Plan of the Carolinas (Rich Plan). Broadhurst was a director of RPC at the time they entered the 1992 Agreement and, between 1992 and 1994, plaintiffs continued to interact with Broadhurst regularly in his capacity as a director of RPC.

In early 1995, after Broadhurst had retired, he encouraged plaintiffs to begin selling FSAs in North Carolina. Plaintiffs began selling FSAs in North Carolina in mid-1995 after receiving pressure from RPC, Geist, and Broadhurst to do so in or around March 1995. (Second Am. Compl. ¶ 32.) In November 1995, Rich Plan filed for bankruptcy, yet the company continued to operate and to sell FSAs in North Carolina. In November 1996, plaintiffs incorporated Rich Food Services, Inc. (RFS) and signed the 1996 Agreement with RPC, pursuant to which they

-4-

were operating at the time they filed this suit.

## II. The Nature of Plaintiffs' Claims Against Broadhurst

Plaintiffs contend that defendant Broadhurst is liable for both his "individual acts and omissions" before and after he served as a director of RPC, (Pls.' Opp. at 11-14), and for his acts and omissions as a director and employee of RPC, (Pls.' Opp. at 14-16). Plaintiffs have identified Counts II, III and IV of their second amended complaint as claims advanced against Broadhurst "individually," i.e., apart from Broadhurst's alleged acts and omissions in his capacity as a director of RPC. (See Pls.' Opp. at 2, n.3 & 3.) As noted previously, Counts II, III, and IV are claims for fraud, intentional misrepresentation, concealment and negligent misrepresentation, unfair and deceptive trade practices, and violation of the New York Consumer Protection Act.

Plaintiffs have identified Count VI as the part of their complaint containing claims against Broadhurst with regard to his actions as a director of RPC between March 1992 and October 1994. (See Second Am. Compl. ¶¶ 73-81.) Within Count VI, plaintiffs seem to allege fraud and misrepresentation, unfair and deceptive trade practices and violations of the New York Consumer Protection Act, (id. ¶ 77), as well as violations of New York Business Corporation Law § 717, (id. ¶ 80), and N.C. Gen. Stat. § 55-8-30, (id. ¶ 81). Styled as a count asserting Broadhurst's "individual" liability, Count VI is an attempt to hold Broadhurst personally liable for the actions he took as a director of RPC between 1992 and 1994.[2]

---

[2] As a federal court sitting in New York has noted,

> a corporation may be sued without concern for Eleventh Amendment limitations; [and] there is no need to plead an "official capacity" suit in order to recover against a corporation. Indeed, it is difficult to imagine why a suit against the corporation would ever be asserted against an officer in his official capacity. In other words, as a practical matter the State's declaration that this suit is

(continued...)

## A. Negligent Misrepresentation -- Counts II and VI

Pursuant to governing North Carolina law,[3] the court cannot conclude that plaintiffs' negligent misrepresentation claims are barred by the statute of limitations.

> The applicable statute of limitations [for negligent misrepresentation claims] is . . . N.C. Gen. Stat. § 1-52(5) [which] prescribes a three-year statute of limitations. However, we have held that a claim for negligent misrepresentation "does not accrue until two events occur: first, the claimant suffers harm because of the misrepresentation, and second, the claimant discovers the misrepresentation."

Barger v. McCoy Hillard & Parks, 488 S.E.2d 215, 224 (N.C. 1997) (citing Jefferson-Pilot Life Ins. Co. v. Spencer, 442 S.E.2d 316, 320 (1994)). But see Riddle v. Metropolitan Life Ins. Co., 1999 WL 33320922 (W.D.N.C. Mar. 8, 1999) ("The clock for negligence begins to run when the alleged misrepresentations were made because Section 1-52(5) of the North Carolina General Statutes contains no discovery provision and courts will not imply one."); Fulton v. Vickery, 326 S.E.2d 354, 389 (N.C. Ct. App. 1985) ("In a negligence claim, the statute of limitations begins to run when the plaintiff's right to maintain an action accrues, and a cause of action accrues when the wrong is complete.") Because the North Carolina Supreme Court has recognized the discovery provision in the context of negligent misrepresentation and because genuine issues of

---

[2](...continued)
against Greenberg *in his capacity as President of Storonske*, as opposed to merely against the corporation itself, draws an unnecessary distinction.

State of New York v. N. Storonske Cooperage Co., Inc. 144 F.R.D. 179, 182 (N.D.N.Y. 1992) (emphasis added). As in Storonske, it is unnecessary to sue Broadhurst in his capacity as a director, and this court must conclude that, in Count VI, plaintiffs have merely attempted to distinguish between Broadhurst's liability for actions taken as a director between 1992 and 1994 and his potential liability for pre-1992 and post-1994 conduct at issue on Counts II, III and IV.

[3] In its 20 November 2001 Order, the court explained that North Carolina's statutes of limitations are applicable in this case. (20 November 2001 Order at 7-8.)

material fact preclude this court from determining when plaintiffs discovered or should have discovered Broadhurst's allegedly negligent behavior, the court must deny the motion for summary judgment to the extent defendant's argument is premised on the applicable statute of limitations for negligent misrepresentation.

Turning to the substance of the claims, under New York law,

> [t]o recover on a theory of negligent misrepresentation, a plaintiff must establish that the defendant had a duty to use reasonable care to impart correct information because of some special relationship between the parties, that the information was incorrect or false, and that the plaintiff reasonably relied upon the information provided . . . .

Grammer v. Turits, 706 N.Y.S.2d 453, 455 (N.Y.A.D. 2nd Dep't 2000)(citations omitted). See also Pappas v. Harrow Stores, Inc., 528 N.Y.S.2d 404, 407 (N.Y.A.D. 2nd Dep't 1988) ("In order to recover on a theory of negligent misrepresentation, a plaintiff must establish that, because of some special relationship with the defendant, which generally implies a closer degree of trust than the ordinary buyer-seller relationship, the law imposes on that defendant a duty to use reasonable care to impart correct information, that the information is false or incorrect, and that the plaintiff reasonably relied upon the information given."). See also Simms v. Prudential Life Ins. Co. of America, 537 S.E.2d 237, 240 (N.C. Ct. App. 2000) ("It has long been held in North Carolina that . . . [t]he tort of negligent misrepresentation occurs when . . . a party justifiably relies . . . to his detriment . . . on information prepared without reasonable care . . . by one who owed the relying party a duty of care.").[4]

---

[4] The parties have not submitted arguments about the substantive law applicable to plaintiffs' tort claims against Broadhurst. Defendant cites North Carolina law and plaintiffs cite, however sparsely, to New York law.
(continued...)

Furthermore,

> In Kimmell the Court of Appeals held that whether a special relationship exists between two parties is an issue of fact, to be governed by the weighing of three factors. In determining whether justifiable reliance exists in a particular case, a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.

Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2nd Cir. 2001)(citing Kimmel v. Schaefer, 675 N.E.2d 450, 454 (N.Y. 1996)).

Whether or not a "special relationship" existed between plaintiffs and Broadhurst, before, during or after Broadhurst's tenure as director, giving rise to a duty on Broadhurst's part of conveying to plaintiffs correct information about RPC's FSA, is, in part, a question of fact. Likewise, whether or not plaintiffs' reliance on Broadhurst was justified is a question of fact. See id.; Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 513 S.E.2d 320, 327 (N.C. 1999) ("At the outset, we note that the 'question of justifiable reliance is analogous to that of reasonable

---

[4](...continued)

The 1992 and 1996 Agreements provide that they shall be "governed and construed under and in accordance with the laws of the State of New York." (Second Am. Compl., Exs. A, B.) For this reason, in its Order dated 20 November 2001, the court applied New York substantive law in its consideration of the claims against RPC but applied North Carolina law with respect to the applicable statutes of limitations. The claims at issue in this motion, while related to plaintiffs' performance of their obligations under the 1992 and 1996 Agreements with RPC and RPC's obligations under those Agreements, are tort claims against Broadhurst. North Carolina's choice of law rules, *lex loci delicti*, indicate that the law of the state in which the injury occurred applies in a tort action. See, e.g., Boudreau v. Baughman, 368 S.E.2d 849, 854 (N.C. 1988) (in actions sounding in tort, "the state where the injury occurred is considered the situs of the claim. Thus, under North Carolina law, when the injury giving rise to a negligence . . . claim occurs in another state, the law of that state governs resolution of the substantive issues in the controversy."). Moreover, "the place of the tort is in the state where the last event invoking tort liability occurred." Williams v. Riley 289 S.E.2d 102, 104 (N.C. Ct. App. 1982). Here, plaintiffs have alleged that Broadhurst engaged in tortious acts in both New York and North Carolina, and the most recent alleged misrepresentations seem to have occurred in North Carolina in 1995. Arguably, then, North Carolina law would apply. In any event, the similarities between North Carolina law and New York law regarding negligence and fraud indicate that the outcome would be the same regardless of which state's law applies.

reliance in fraud actions, where it is generally for the jury to decide whether plaintiff reasonably relied upon the representations made by defendant.' . . . 'Ordinarily, the question of whether an actor is reasonable in relying on the representations of another is a matter for the finder of fact.'" (citations omitted)). Plaintiffs have submitted affidavits stating that they interacted with Broadhurst on numerous occasions over the course of several years about the marketing of the FSA that he helped design for RPC, that Broadhurst gave them very specific advice about how to market the product in North Carolina, and that Broadhurst knew, at the time he provided the information to plaintiffs, that they would sell the FSAs in question in North Carolina if they sold them at all. Given Broadhurst's many and varied roles with RPC between 1991 and 1995 and the part he played over the years in encouraging and facilitating the plaintiffs' marketing of the FSA in North Carolina, plaintiffs have at least raised genuine issues of material fact as to the nature of their relationship with Broadhurst and whether they justifiably relied on Broadhurst's advice and counsel. Broadhurst's motion for summary judgment therefore will be denied as to plaintiffs' negligent misrepresentation claims against him based on his conduct before and after he served as a director (Count II) and on his conduct while serving as a director (Count VI).

### B. Fraud and Intentional Misrepresentation — Counts II and VI

> "In an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" . . . . The "standard of proof for establishing fraud is clear and convincing evidence" . . . .

Clarke v. Wallace Oil Co., Inc., 727 N.Y.S.2d 139, 139 (N.Y.A.D. 2nd Dept. 2001)(citations omitted). See also Gambello v. Time Warner Communications, Inc., 186 F. Supp. 2d 209, 227-

28 (E.D.N.Y. 2002)(under New York law, elements of fraudulent or intentional misrepresentation are that 1) the defendant made a material false representation; 2) the defendant intended to defraud the plaintiff thereby; 3) the plaintiff reasonably relied upon the representation; and 4) the plaintiff suffered damages as a result of such reliance); Congress Financial Corp. v. John Morrell & Co., 790 F. Supp. 459, 469, 471 (S.D.N.Y. 1992) (The elements of a claim for actual fraud "under New York law are a false representation, scienter, materiality, expectation of reliance, justifiable reliance, and damage" and the elements of fraudulent concealment are "a relationship between contracting parties that creates a duty to disclose, knowledge of material facts by a party bound to make such disclosures, nondisclosure, scienter, reliance, and damage."); C.F.R. Foods, Inc. v. Randolph Development Co., 421 S.E.2d 386, 388-89 (N.C. Ct. App. 1992) ("The essential elements of fraud are: '(1) [F]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' . . . Additionally, plaintiff's reliance must be reasonable." (citations omitted)).

Plaintiffs do not allege that Broadhurst explicitly told them it would be legal to market the FSA in North Carolina. Broadhurst maintains that he never had a conversation with plaintiffs about the legality of the FSA. As a factual matter, then, the evidence submitted by the parties indicates that Broadhurst did not make any representations to plaintiffs about the legality of the FSA and therefore cannot be said to have made an overt misrepresentation.

Plaintiffs have claimed, however, that Broadhurst fraudulently implied, i.e., represented,

Case 5:99-cv-00677-BR   Document 139   Filed 11/13/02   Page 10 of 20

that it would be legal for them to sell the FSA in North Carolina.[5] Misrepresentation can be communicated through silence: "[t]here are situations where a material omission can induce detrimental reliance as effectively as a false statement." Securities Investor Protection Corp. v. BDO Seidman, 746 N.E.2d 1042, 1047 (N.Y. 2001). See also C.F.R. Foods, Inc, 421 S.E.2d at 388-89.

While deliberate concealment or omission can form the basis of a fraud claim, Broadhurst cannot be held liable for fraud, intentional misrepresentation or fraudulent concealment if he did not know that the FSAs were illegal in North Carolina or have an affirmative reason to believe that they were not legal in North Carolina. Broadhurst has submitted a sworn statement that he had no information or opinion on the legality of the FSAs in North Carolina. Plaintiffs dispute his claim. In support of their argument, plaintiffs cite generally Broadhurst's significant level of involvement with RPC, particularly as it related to the development of the FSA, as well as the October 1997 memo authored by defendant Wilson referring to the fact that the issue of FSAs as insurance had arisen before and could possibly arise again. Plaintiffs argue that these circumstances give rise to an inference that Broadhurst had or should have had affirmative knowledge about the compliance of the FSA with North Carolina laws and that he intended to deceive plaintiffs.

Plaintiffs' evidence is not sufficient to give rise to such an inference. While it is possible, given Broadhurst's many and varied roles with RPC, that he should have known about the

---

[5] Plaintiffs have alleged that Broadhurst knew that the FSA did not comply with North Carolina law and failed to tell plaintiffs about that illegality or, at the very least, that Broadhurst knew he had no information about the FSA's compliance with North Carolina law and failed to tell plaintiffs that they would need to take responsibility for complying with applicable laws.

-11-

potential legal issues with the FSA, fraud and misrepresentation simply are not about what Broadhurst should have known as a director or agent of RPC. Nor may liability be imposed on Broadhurst based on what plaintiffs believe he should have known as a sales and marketing expert. Rather, these counts require evidence of knowledge and intent to deceive. No matter how deeply involved Broadhurst happened to be with the development of the FSA for RPC between 1990 and 1994, the evidence plaintiffs have offered does not support the inference that he personally knew that the FSA, as designed, failed to comply with the laws of North Carolina. The fact that the FSAs were not even being sold in North Carolina between 1990 and 1994 only supports that conclusion. Also, unlike defendants Geist and Wilson, there is no evidence that Broadhurst had any interactions whatsoever with the North Carolina Attorney General's office that would lead him to be aware of potential compliance problems. Again, the court reiterates that what Broadhurst should have known, given his position of responsibility with RPC, presents a discrete issue not relevant to the fraud and intentional misrepresentation counts.

This court's previous conclusion in its Order dated 20 November 2001 that issues of fact precluded summary judgment in favor of RPC on the fraud and misrepresentation counts does not mandate a similar result here. The knowledge of officers, agents, directors and employees may be imputed to RPC, RPC can only act through such individuals, and plaintiffs' evidence raises a genuine issue of material fact as to the knowledge and intent of the corporation even though it is not sufficient to raise such an issue as to defendant Broadhurst.[6]

---

[6] For example, while plaintiffs point to the October 1997 memo authored by defendant Wilson as evidence that RPC "knew" that the FSAs had been construed as insurance in the past, the existence of that memo is not sufficient to create a genuine issue of material fact as to Broadhurst's knowledge.

-12-

Case 5:99-cv-00677-BR Document 139 Filed 11/13/02 Page 12 of 20

Broadhurst's motion for summary judgment with respect to the fraud and intentional misrepresentation claims lodged against him as an "individual" (Count II) and as a director (Count VI) will be allowed.

### C. Unfair and Deceptive Trade Practices and New York Consumer Protection Act — Counts III, IV and VI

1. UDTPA

Defendant argues that plaintiffs' UDTPA claims are barred by the statute of limitations. (Def.'s Mem. at 8.) The statute of limitations for an action brought pursuant to North Carolina's UDTPA is four years from the date the cause of action accrues. N.C. Gen. Stat. § 75-16.2; Neugent v. Beroth Oil Co., 560 S.E.2d 829, 839 (N.C. Ct. App. 2002). A cause of action accrues when the violation occurs. Id.; Jones v. Asheville Radiological Group, P.A., 518 S.E.2d 528, 533 (N.C. Ct. App. 1999), rev'd in part, 524 S.E.2d 804 (N.C. 2000). Nevertheless, in UDTPA cases based on allegedly fraudulent conduct or negligent misrepresentation, North Carolina courts have stated that the cause of action accrues "at the time the fraud is discovered or *should have been discovered* with the exercise of reasonable diligence." Nash v. Motorola Communications and Electronics, 385 S.E.2d 537, 538 (N.C. Ct. App. 1989) (emphasis in original).[7] See also Liner v. DiCresce, 905 F. Supp. 280, 289 (M.D.N.C. 1994). Accordingly, whether the UDTPA's statute of limitations bars the claims at issue depends on the nature of the

---

[7] Ordinarily, whether a person has exercised due diligence is a question for the jury; however, "where the evidence is clear and shows without conflict that the claimant had both the capacity and opportunity to discover the mistake or discrepancy but failed to do so, the absence of reasonable diligence is established as a matter of law."

Underwood v. Northwestern Mut. Life Ins. Co., No. COA01-797, 563 S.E.2d 309, 2002 WL 857703, **1 (N.C. Ct. App. May 7, 2002) (citing Nash).

-13-

conduct alleged to be unfair and deceptive.

The precise nature of plaintiffs' UDTPA claims is difficult to discern from their Second Amended Complaint. To the extent that defendants' alleged negligent or fraudulent conduct forms the basis of plaintiffs' UDTPA claims, the court must conclude that such claims are not barred by the four year statute of limitations for the reasons set forth below. All other UDTPA claims are barred, however.

*a. Allegedly Negligent and Fraudulent Conduct*

The UDTPA declares unlawful all

> "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce . . . ." N.C. Gen. Stat. § 75-1.1. In order to establish a violation of this section, plaintiffs must meet a three-pronged test: (1) there must be a showing of an unfair or deceptive act or practice, or an unfair method of competition; (2) in or affecting commerce; (3) which proximately caused actual injury to the plaintiff.

Sunbelt Rentals, Inc. v. Head and Engquist Equip., L.L.C., No. 00-CVS-10358, 2002 WL 31002955, *16 (N.C. Super. Ct. July 10, 2002) (citations omitted). "'Under N.C. Gen. Stat. § 75-1.1, the question of what constitutes an unfair or deceptive trade practice is an issue of law.'" Eastover Ridge, L.L.C. v. Metric Constructors, Inc., 533 S.E.2d 827, 830 (N.C. Ct. App.) (citation omitted), rev. denied, 546 S.E.2d 93 (2000). "Although a court generally determines whether an act or practice is unfair or deceptive based upon the jury's findings, a court may grant summary judgment if the facts are not disputed and the moving party is entitled to judgment as a matter of law." Tucker v. Boulevard at Piper Glen, LLC, 564 S.E.2d 248, 250 (N.C. Ct. App. 2002).

> Conduct is unfair or deceptive if it has the capacity or tendency to

-14-

> deceive. The Act does not precisely define the term unfair or
> deceptive trade practices, and neither is such a definition possible.
> Rather, the surrounding facts of the transaction and the impact on
> the marketplace determine if the transaction is unfair or deceptive,
> and this determination is a question of law for the court.

Canady v. Mann, 419 S.E.2d 597, 602 (N.C. Ct. App. 1992).

Negligent misrepresentation can constitute an unfair and deceptive trade practice. See, e.g., South Atlantic Ltd. Partnership of Tennessee L.P. v. Riese, 284 F.3d 518, 541 (4th Cir. 2002) ("As a rule, misrepresentations, even negligent misrepresentations, are sufficient for an act to qualify as an unfair or deceptive trade practice."); Forbes v. Par Ten Group, Inc., 394 S.E.2d 643, 651 (N.C. Ct. App. 1990), rev. denied, 402 S.E.2d 824 (1991). But see Pharmacy Servs., Inc. v. Beverly-Hanks & Assoc., Inc., 124 F. Supp. 2d 343, 353 (W.D.N.C. 2000) ("Negligent misrepresentations, mere disagreements, and misunderstandings do not give rise to a claim for deceptive trade practice.") While proof of fraud necessarily constitutes an unfair and deceptive trade practice, John v. Robbins, 764 F. Supp. 379, 391 (M.D.N.C. 1991), proof of fraud is not necessary to establish a violation of § 75.1-1. See First Atlantic Management Corp. v. Dunlea Realty Co., 507 S.E.2d 56, 64 (N.C. Ct. App. 1998) ("A misrepresentation may constitute an unfair and deceptive trade practice under G.S. § 75-1.1, . . . but deliberate acts of deceit or bad faith need not be shown. . . . Rather, a party's words or conduct must possess the "tendency or capacity to mislead" or create the "likelihood of deception."); Kron Medical Corp. v. Collier Cobb & Assoc., Inc., 420 S.E.2d 192, 196 (N.C. Ct. App.) (failure to disclose information may be tantamount to misrepresentation and thus constitute an unfair or deceptive trade practice), review denied, 333 N.C. 168, 424 S.E.2d 910 (1992); John, 764 F. Supp. at 391 (where foundation for UDTPA claims was fraud and negligent misrepresentation and those claims

-15-

survived summary judgment, UDTPA claim necessarily survived summary judgment as well).

While the court has concluded that sufficient evidence has not been offered to support plaintiffs' fraud and intentional misrepresentation claims against Broadhurst, the court cannot conclude, as a matter of law at this juncture, that plaintiffs' evidence could not support a finding that Broadhurst engaged in conduct with the tendency or capacity to mislead, either as a director or in the period before and after his tenure as a director when and if he was acting as an agent of RPC. Count III must therefore survive summary judgment as well as Count VI to the extent the latter count includes an unfair and deceptive trade practices claim.

### b. *Other Bases for the UDTPA Claims*

Plaintiffs' unfair and deceptive trade practices claim may also be read to encompass defendant Broadhurst's alleged participation as a director of RPC in RPC's failure to register its franchise offering and disclosure documents in New York, (Second Am. Compl. ¶¶ 19, 21, 25), and in RPC's failure to comply with federal statutory disclosure obligations, (id. ¶¶ 16-18, 21, 25), i.e., the alleged violations of the New York Franchise Act. (20 November 2001 Order at 20 n.10.) There is no reason that plaintiffs should not have discovered defendants' alleged failure to comply with the various rules and regulations pertaining to franchises at the time they entered their 1992 Agreement. Plaintiffs did not file this action against Broadhurst until May 2000, well beyond the UDTPA's four-year statute of limitations. Even construing defendants' failure to comply with the various registration and disclosure laws as some kind of continuing violation, the statutory period necessarily began to run with respect to Broadhurst in 1994 when he retired, and the claims would accordingly be barred. Because Broadhurst was not a director when plaintiffs entered the 1996 Agreement, he did not have the disclosure and registration obligations

-16-

at issue in this claim at that time. Accordingly, to the extent plaintiffs have tried to allege that the violations of the New York Franchise Act are also violations of the UDTPA, those claims must be dismissed based upon the statute of limitations.

In sum, only the UDTPA claims based on the allegedly negligent and fraudulent conduct survive summary judgment.

2. Consumer Protection Act

The New York Consumer Protection Act, N.Y. Gen. Bus. L. §§ 349 and 350, declares unlawful deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.

> In order to state a claim under N.Y. Gen. Bus. L. § 349, a plaintiff must prove three elements. First, the challenged act must be consumer oriented. Second, that the act was misleading in a material way, and third, that the plaintiff suffered injury as a result of the act. Stutman v. Chemical Bank, 95 N.Y.2d 24, 28, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000). Reliance on the misrepresentation is not an element of the claim. Id. at 30, 709 N.Y.S.2d 892, 731 N.E.2d 608.

Anunziatta v. Orkin Exterminating Co., Inc., 180 F. Supp. 2d 353, 361 (N.D.N.Y. 2001).

To the extent that plaintiffs' consumer protection claims rest on any representations Broadhurst made to them in 1991 and 1992 when they signed their original franchise agreement with RPC, it is difficult to discern any injury sustained by plaintiffs as a result of Broadhurst's conduct. Whatever Broadhurst may have said about the FSAs at that time, plaintiffs declined to sell them and specifically altered their 1992 Agreement to ensure that they would not be required to do so.

Secondly, New York courts have specifically held that to qualify as actionable deceptive practices within the meaning of the statute, the practices in question must occur in New York:

-17-

> The phrase "deceptive acts or practices" under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer (see Gaidon, 94 N.Y.2d 330, 704 N.Y.S.2d 177, 725 N.E.2d 598; Oswego, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741). Thus, to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York.

Goshen v. Mutual Life Ins. Co. of New York, 746 N.Y.S.2d 858, 863-64 (N.Y. 2002). In accordance with this rule, Broadhurst's interactions with plaintiffs after his retirement in 1994, which occurred, according to plaintiffs, in North Carolina, could not form the basis of actionable deceptive practice claims under the New York Act. (See Pls.' Opp. at 9 (describing interaction with Broadhurst in Rocky Mount, NC in the winter of 1995).)

The court also notes that, even though plaintiffs, as franchisees, might be considered consumers vis-a-vis RPC, (see 20 November 2001 Order at 24), it is difficult to conclude that plaintiffs are consumers, for purposes of the New York Consumer Protection Act, vis-a-vis Broadhurst after he resigned from RPC.

For the foregoing reasons, summary judgment will be allowed with respect to the New York Consumer Protection claims against Broadhurst based on his conduct before and after he served as a director.

With respect to any consumer protection claims brought against Broadhurst based on his conduct as a director of RPC between March 1992 and October 1994, the court must conclude that genuine issues of material fact preclude summary judgment to the extent such claims are based on the conduct characterized as negligent and fraudulent in other portions of plaintiffs' second amended complaint. As is the case under North Carolina's UDTPA, "[a] deceptive practice . . . need not reach the level of common-law fraud to be actionable under section 349 . . .

-18-

Case 5:99-cv-00677-BR    Document 139    Filed 11/13/02    Page 18 of 20

." Stutman, 731 N.E.2d at 896. Rather, a plaintiff must show that consumer-oriented conduct was misleading in a material way and that he suffered injury as a result of that conduct.

### D. Violations of N.C. Gen. Stat. § 55-8-30 and N.Y. Gen. Bus. Law § 717 — Count VI

As previously recognized, the substance of Count VI deals with Broadhurst's conduct during the time he served as a director of RPC. To the extent that plaintiffs claim that Broadhurst committed fraud and intentional misrepresentation, unfair and deceptive trade practices and violations of the New York Consumer Protection Act between 1992 and 1994, the court has addressed those claims in the foregoing portions of the Order.

To the extent plaintiffs allege discrete violations of N.C. Gen Stat. § 55-8-30 and N.Y. Gen. Bus. L. § 717, (see Second Am. Complaint ¶¶ 78-82), the court must conclude that any such claims against Broadhurst are time-barred. N.C. Gen. Stat. § 55-8-30 and N.Y. Gen. Bus. L. § 717 are statutorily-defined obligations and, as such, would be governed by the three-year statute of limitations in N.C. Gen. Stat. § 1-52(2). "The general rule, for claims other than malpractice, provides that a cause of action accrues as soon as the right to institute and maintain a suit arises." Hamlet HMA, Inc. v. Richmond Co., 531 S.E.2d 494, 498 (N.C. Ct. App. 2000) (citing N.C. Gen. Stat. § 1-15(a) (1999)). Because Broadhurst did not serve as a director after October 1994, and because plaintiffs did not file this action against Broadhurst until May 2000, any alleged direct violations of N.C. Gen. Stat. § 55-8-30 and N.Y. Gen. Bus. L. § 717 against defendant Broadhurst contained in Count VI are time-barred.

-19-

## Conclusion

For the foregoing reasons, defendant Broadhurst's summary judgment motion is ALLOWED with respect to the fraud and intentional misrepresentation claims asserted against Broadhurst. The motion is also ALLOWED as to plaintiffs' New York Consumer Protection Act claim to the extent that claim is asserted against Broadhurst based on conduct before and after he served as a director of RPC. The motion is DENIED with respect to the remainder of plaintiffs' claims.

This ___11___ November 2002.

_____
W. Earl Britt
Senior United States District Court Judge